Roger N. Heller (State Bar No. 215348)
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
rheller@lchb.com

STEVEN A. SCHWARTZ*
steveschwartz@chimicles.com
BEENA M. MCDONALD*
bmm@chimicles.com
ALEX M. KASHURBA*
amk@chimicles.com
MARISSA N. PEMBROKE*
mnp@chimicles.com
CHIMICLES SCHWARTZ KRINER
& DONALDSON-SMITH LLP
One Haverford Centre
361 Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500

JAMES J. ROSEMERGY*
jrosemergy@careydanis.com
CAREY, DANIS & LOWE
8235 Forsyth, Suite 1100
St. Louis, MO 63105
Telephone: (314) 725-7700

*pro hac vice application to be submitted

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VICTORIA WADE, individually and on behalf of all others similarly situated, | Case No. 5:25-cv-701 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| PAYPAL, INC., | **JURY TRIAL DEMANDED** |
| Defendant. | |

COMES NOW Plaintiff Victoria Wade, individually and on behalf of all others similarly situated, and for her cause of action against Defendant PayPal, Inc., states and alleges as set forth herein.  The allegations made as to her own experience are made upon personal knowledge, all other matters are alleged upon information and belief upon the investigation of counsel.

**INTRODUCTION**

1. This class action lawsuit arises from PayPal, Inc.'s ("Defendant") ownership and use of the Honey browser extension ("Honey") to poach commissions generated by online content creators and personalities who use affiliate links to generate and track online sales.

2. Honey is a browser extension that is marketed as a tool to help consumers find and apply online coupons to save money. The pitch is that when consumers are checking out to complete a purchase at an online merchant, they click on Honey, and it will identify any online coupon or promotional codes that may be applicable to the purchase and apply them to save consumers money before they complete the purchase.

3. What Honey does behind the scenes, however, is very different.  While pretending to be helpful to the consumer, Honey goes to work under the hood to replace any affiliate link tracking cookies with its own tracking cookie so it will appear to the merchant that Honey originated the sale. Honey then takes the commission, unbeknownst to the consumer, affiliate or vendor, depriving the affiliate of the fruits of their marketing efforts.

4. This conduct has caused significant financial harm to Plaintiff Victoria Wade and similarly situated individuals who rely on affiliate marketing for income.

**PARTIES, JURISDICTION & VENUE**

5. Plaintiff Victoria Wade is a citizen and resident of Maryland. She is an online influencer who utilizes affiliate marketing links to earn commissions by promoting products and directing her audience to merchant websites.

6. Defendant PayPal, Inc. ("PayPal") is a Delaware corporation with its principal place of business in San Jose, California. PayPal is a global financial technology company with a primary focus

in online payment systems, and it has become one of the world's most recognized and trusted platforms for digital payments.

7. In addition to its digital payment platform, PayPal owns and operates the Honey browser extension. Honey is a free browser extension developed by PayPal that purports to assist online shoppers in finding and applying discount codes at checkout. Compatible with browsers like Chrome, Firefox, Safari, Opera, and Edge, Honey automatically searches for and tests available coupon codes on over 30,000 popular online merchants. If a working code is found, it applies the one with the biggest savings to the consumer's cart.

8. As detailed herein, the Honey extension also has a darker, undisclosed purpose of redirecting sales from affiliate online marketers to Honey by replacing the affiliate tracking cookie to make the vendor believe that Honey originated the sale.

9. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2) because this is a class action with an amount in controversy exceeding $5,000,000, exclusive of interest and costs, and at least one class member is a citizen of a state different from Defendant.

10. Venue is proper in this District under 28 U.S.C. § 1391 because Defendant resides in this District, and a substantial part of the events or omissions giving rise to the claim occurred here.

**FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

11. Online affiliate marketing is a performance-based strategy where businesses reward individuals or entities, known as affiliates, for driving traffic or sales to their products or services.

12. Affiliates promote a company's offerings through various channels—such as blogs, social media, or websites—and earn a commission for each sale or action generated through their unique referral links provided by the businesses.

13. This model benefits both parties: companies expand their reach without upfront advertising costs, and affiliates monetize their platforms by promoting products and vendors relevant to their audience.

14. In addition to the unique referral links, this system also relies on tracking cookies that attribute sales to the appropriate affiliate to determine who earns the commission.

15. The most commonly employed model to determine who earns the commission for an online purchase is "**last-click" attribution,** which assigns 100% of the credit for a sale to the final touchpoint—the last affiliate link clicked by the consumer before making a purchase. This approach simplifies tracking and compensation, ensuring that the affiliate who directly influenced the final purchase decision is rewarded.

16. Defendant exploits last-click attribution by triggering a Honey pop-up at checkout for customers who have installed the Honey browser extension. When a customer clicks on the Honey link during checkout after previously clicking on an affiliate link, Defendant's affiliate cookie replaces the referring content creator's affiliate cookie.

17. A comparison to a transaction without Honey highlights the issue. Under normal circumstances, when a customer clicks on an affiliate link and then goes on to complete a purchase without further interaction, the sale is correctly attributed to the originating affiliate.

18. In contrast, if the customer uses Honey at checkout after clicking on an affiliate link, Defendant's tracking cookie is surreptitiously swapped in for the originating affiliate link, and the transaction is attributed to Defendant instead depriving the affiliate of credit for the sale.

19. Notably, even when Honey provides no discount codes and provides no tangible benefit to the customer whatsoever, any click on its pop-up during checkout ensures that it appears that Defendant referred the customer, and Defendant accordingly receives credit – and commission – for the transaction.

20. As a result of this interference, affiliate contributions to customer acquisition are not properly tracked by their business partners. Defendant's disruption of the last-click attribution process undermines the ability of Plaintiff and the Class to demonstrate their performance and deprives them of commissions.

21. Additionally, Defendant's conduct also prevents Plaintiff and the Class's business partners from accurately tracking the customers brought in through affiliate links, knowingly allowing its Honey browser extension to claim credit for customer acquisitions that should have been attributed to Plaintiff and other content creators. In addition to lost commissions, this also skews metrics that reflect affiliates' role in driving sales, which impacts future business relationships with current and prospective business partners.

22. These actions have harmed Plaintiff and the Class's relationships with their business partners, resulting in diminished trust, less favorable contract terms, and, in some cases, the non-renewal of contracts. Defendant has unjustly benefited from these practices, receiving credit for customer acquisitions at the expense of Plaintiff and the Class, either through commission payments or click attribution metrics.

**PLAINTIFF'S EXPERIENCE IS DEMONSTRATIVE**

23. Plaintiff Victoria Wade is an influencer and content creator who promotes various products across several social media platforms including TikTok, Instagram, Threads, and X (formerly Twitter).

24. Plaintiff has business relationships with several online vendors who provide her with affiliate links to market their products and websites, including Amazon, Target, and other vendors. Plaintiff earns commission payments from these affiliate marketing links when users use her affiliate links to purchase products online.

25. PayPal used the Honey extension to steal credit and commission for sales made using Plaintiff's affiliate links that Plaintiff originated and for which she should have received credit and commission.

26. But for Defendant's fraudulent scheme to capture and misappropriate Plaintiff's sales, Plaintiff would have earned more money from commission payments than she did. Additionally, had Plaintiff's marketing partners been aware of the true volume of sales she has generated, she would have been viewed more favorably by them and been provided with more favorable affiliate terms.

5
CLASS ACTION COMPLAINT

## CLASS ACTION ALLEGATIONS

27. Plaintiff seeks to represent a class as defined as follows:

<u>Nationwide Class:</u>

All individuals or entities in the United States who participated in an affiliate commission program and had their commissions diverted to PayPal as a result of the Honey browser extension.

Excluded from this class definition are employees, officers, directors of Defendant, and attorneys appearing in this case, and any judge assigned to hear this action.

<u>State Subclass:</u>

All individuals or entities in Maryland who participated in an affiliate commission program and had their commissions diverted to PayPal as a result of the Honey browser extension.

Excluded from this class definition are employees, officers, directors of Defendant, and attorneys appearing in this case, and any judge assigned to hear this action.

28. **Numerosity**: The class is so numerous that joinder of all members is impracticable. The proposed Class can be identified through Defendant's records and merchant partners' databases through the use of objective criteria, but on information and belief, it numbers in the thousands.

29. **Commonality**: There are questions of law and fact common to the class which predominate over any questions impacting individual members of the Class, including:

   a. Whether Defendant reattributed sales commissions designated for Plaintiff and the Class to itself;

   b. Whether Defendant's conduct constitutes intentional interference with prospective economic relations;

   c. Whether Defendant's conduct constitutes intentional interference with contract;

   d. Whether Defendant has been unjustly enriched;

   e. Whether Defendant's conduct constitutes violation of California's Unfair Competition Law;

   f. Whether Defendant has wrongfully diverted and converted the property of Plaintiff and the Class to itself;

      g.    Whether Plaintiff and the Class have sustained damage, and to what extent;

      h.    Whether Defendant is liable for punitive damages;

      i.    Whether injunctive relief is appropriate.

30. **Typicality**: Plaintiff's claims are typical of the claims of the class, as all members have been similarly affected by Defendant's wrongful conduct.

31. **Adequacy**: Plaintiff will fairly and adequately protect the interests of the class because she is a member of the class she seeks to represent and has interests that coincide with, and are not antagonistic to, the interests of the Members of the proposed Class.  Plaintiff has retained counsel who have extension experience in class action litigation, and who are effectively positioned and competent to prosecute this litigation.

32. **Superiority**: Legal and factual questions shared among the proposed Class Members outweigh those affecting only individual members, making a class action the most effective, efficient, and fair means of resolving the dispute. The determination of liability will rely on a common set of facts and legal arguments, while the issue of willfulness will hinge on Defendant's actions and knowledge rather than their specific impact on individual class members.

33. The damages sought by each class member are such that pursuing individual claims would be prohibitively costly and burdensome due to the complexity and scale of litigation caused by Defendant's conduct. Even if they could afford separate lawsuits, such an approach would unnecessarily strain the judicial system. Individual cases could lead to inconsistent or contradictory rulings, compounding delays and expenses for all parties involved.

34. In contrast, a class action offers significant advantages by enabling the court to resolve numerous claims through a unified set of evidence in a single proceeding. This method promotes judicial efficiency, reduces redundancy, and ensures a fair and consistent outcome for all members of the proposed class.

35. **Injunctive Relief**: Defendant has acted on grounds generally applicable to the proposed Putative Class, making appropriate equitable injunctive relief with respect to Plaintiff and the

proposed Putative Class Members. Moreover, absent class action treatment and an injunction for the benefit of the class, it is likely that the conduct complained of herein will continue.

## TOLLING OF THE STATUTE OF LIMITATIONS

36. All relevant statutes of limitations have been tolled due to PayPal's intentional and active concealment of the facts outlined in this complaint. Plaintiff and the Class could not have reasonably discovered PayPal's practice of covertly manipulating network transmissions to allow Honey to claim sales commissions it did not legitimately earn.

37. PayPal has had, and continues to have, a duty to disclose to Plaintiff and the Class its practice of replacing tracking tags that identify online marketers as the source of referrals with its own tracking tags, thereby diverting commissions rightfully owed to online marketers like Plaintiff and the Class. Due to PayPal's active concealment of this conduct, all applicable statutes of limitations related to these allegations have been tolled.

## CAUSES OF ACTION

### Count I:
### Intentional Interference with Prospective Economic Relations

38. Plaintiff restates and realleges each of the foregoing allegations as if fully set forth herein.

39. Plaintiff and the Class maintain an ongoing economic relationship with eCommerce merchants by directing their followers to those merchants through affiliate links. In return, the merchants compensate Plaintiff and the Class with referral fees or commissions. This arrangement is continuous, with Plaintiff and the Class expecting to continue earning commissions from these referrals.

40. PayPal is aware of the referral and commission-based relationship between Plaintiff, the Class, and eCommerce merchants.

41. Using the Honey browser extension, PayPal diverts commission payments away from Plaintiff and the Class, who created and shared affiliate links, promoted them, and facilitated the referral and eventual sale of the merchants' products or services. Through the Honey extension, PayPal

displaces tracking tags that identify online marketers as the referral source with its own tracking tags, falsely claiming to be the referrer of the products or services, even though the sale originated from the efforts of the original affiliate marketer.

42.     PayPal either intentionally sought to take commissions that rightfully belong to Plaintiff and the Class or knowingly engaged in conduct that appropriated commissions and referral fees from them.

43.     As a direct and proximate result of Defendant's interference and related conduct described herein, Plaintiff and members of the Putative Class have suffered damages.  As a result of PayPal's actions, Plaintiff and the Class have been harmed, as the Honey browser extension has deprived them of the earnings and other benefits they rightfully deserve as the true originators of sales through their affiliate marketing links.

## Count II:
## Intentional Interference with Contract

44.     Plaintiff restates and realleges each of the foregoing allegations as if fully set forth herein.

45.     Plaintiff and members of the Class had valid contractual relationships with Defendant's merchant partners through affiliate marketing agreements.

46.     Defendant was aware of these contractual relationships and knew that its merchant partners worked with Plaintiff and members of the Class and would compensate Plaintiff and the Class for driving traffic to their websites or to purchase their products through the use of affiliate links.

47.     Defendant's actions interfered with Plaintiff and the Class's merchant partners' ability to fulfill their contractual obligations to Plaintiff and the Class, and otherwise interfered with the contractual relationship.

48.     Defendant either intended to disrupt Plaintiff's contractual relationships or acted with knowledge that its conduct would frustrate the parties to those contractual relationships' performance more difficult, costly, or impossible.

49. As a result of Defendant's interference, Plaintiff and the Class were harmed.

50. Defendant's actions artificially and negatively distorted customer acquisition data generated via affiliate links, causing merchant partners to perceive members of the Class as underperforming relative to their actual contributions and diverting commissions and other contractual benefits intended for Plaintiff and the Class to Defendants.

51. As a direct and proximate result of Defendant's interference and related conduct described herein, Plaintiff and members of the Putative Class have suffered damages.

### Count III:
### Unjust Enrichment

52. Plaintiff restates and realleges each of the foregoing allegations as if fully set forth herein.

53. Plaintiff and the Class hold both equitable and legal rights to the referral fees and commission payments that were wrongfully withheld from them. These payments were legitimately earned by Plaintiff and the Class, and PayPal did nothing to earn these referrals.

54. PayPal derived financial benefit from referral fees and commission payments that were improperly attributed to it due to the Honey browser extension fraudulently claiming credit for commissions through last-click attribution.

55. PayPal knowingly accepted these benefits and was fully aware that the actions of the Honey browser extension would cause the harm outlined in this Complaint.

56. Absent PayPal's improper and unjust exploitation of the Honey browser extension, it would not have received or retained commission payments from sales originating through the affiliate marketing links of Plaintiff and the Class.

57. Through the misconduct described in this Complaint, PayPal has been unjustly enriched at the expense of Plaintiff and the Class, depriving them of the payments to which they are entitled.

58. PayPal continues to profit from its use of the Honey browser extension, while Plaintiff and the Class remain deprived of the commission payments that rightfully belong to them.

59. The unjust enrichment that PayPal has obtained is directly and proximately tied to the wrongful actions described herein, specifically its use of the Honey browser extension to misappropriate referrals and commissions it did not legitimately earn.

60. The benefits and profits that PayPal has enjoyed were not provided gratuitously or voluntarily. Retaining these gains would be inequitable and contrary to principles of justice.

61. Fairness and equity demand that PayPal be required to disgorge the profits and benefits it wrongfully acquired and return them to Plaintiff and the Class.

**Count IV:
Violation of California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 et seq.)**

62. Plaintiff restates and realleges each of the foregoing allegations as if fully set forth herein.

63. California's Unfair Competition Law (UCL) prohibits any business act or practice that is "unlawful, unfair, or fraudulent." See Cal. Bus. & Prof. Code §§ 17200 et seq.

64. PayPal qualifies as a "person" under Cal. Bus. & Prof. Code § 17201.

65. PayPal has engaged in conduct that violates the UCL by committing unlawful and unfair business practices.

66. PayPal's actions are unlawful because they interfere with the legitimate economic interests of online marketers, amount to conversion as detailed below, and have resulted in PayPal's unjust enrichment as previously described.

67. PayPal has engaged in unfair business practices by leveraging the Honey browser extension to misappropriate credit for sales referrals, thereby diverting commission payments that rightfully belong to Plaintiff and the Class.

68. PayPal's conduct is unfair under the UCL because it contravenes California's public policy protecting individuals from interference with prospective economic advantage.

69. Through these practices, PayPal has wrongfully deprived Plaintiff and the Class of earnings they are entitled to as the legitimate sources of sales generated via their affiliate marketing links.

70. The harm caused by PayPal's appropriation of commissions far outweighs any alleged benefits of its actions. PayPal's conduct is against public policy, unscrupulous, and has caused substantial and ongoing economic harm to Plaintiff and the Class.

71. PayPal's unlawful practices have directly and proximately caused economic injury to Plaintiff and the Class by depriving them of commission payments they would have otherwise earned.

72. The actions detailed in this Complaint are ongoing, with no indication that PayPal intends to cease its harmful practices.

73. As a result of PayPal's violations of the UCL, Plaintiff and the Class have been deprived of the referral fees and commission payments to which they are entitled. This conduct has caused Plaintiff and the Class to suffer financial losses.

74. Accordingly, Plaintiff seeks restitution, injunctive relief, and all other equitable remedies, including reasonable attorneys' fees and litigation costs.

**Count V:**
**Conversion**

75. Plaintiff and class members had a right to the affiliate commissions earned through their marketing efforts.

76. Plaintiff and the Class had possession of, or a rightful claim to, commissions earned for referring consumers to purchase products and services from eCommerce merchants. These commissions represented specific, identifiable sums.

77. PayPal intentionally and significantly disrupted Plaintiff's and the Class's property rights by wrongfully taking control of the commissions and referral fees that were owed to them.

78. Without proper authorization, PayPal assumed control and ownership of these commissions, acting in a manner adverse to the rights of Plaintiff and the Class, and without any valid justification.

79. PayPal's improper dominion over the commissions rightfully belonging to Plaintiff and the Class constitutes conversion.

80. At no time did Plaintiff or the Class consent to, or approve of, PayPal's interference with their rightful commissions.

81. As a direct and proximate cause of PayPal's actions, Plaintiff and the Class have suffered damages.

**PLAINTIFF DEMANDS TRIAL BY JURY ON ALL COUNTS SO TRIABLE**

WHEREFORE, Plaintiff prays this Honorable Court order the following relief:

a. Certify this case as a class action, and appoint Plaintiff as Class Representatives and the undersigned attorneys as Class Counsel;

b. Enter judgment in favor of Plaintiff and the Class;

c. Award Plaintiff and the Class damages in an amount to be proven at trial;

d. Enter injunctive and/or declaratory relief as is necessary to protect the interests of Plaintiff and the Class, including reformation of practices to prevent the Honey browser extension from taking commissions for sales it did not originate;

e. Additionally award any and all additional general, special, incidental, statutory, treble, punitive, liquidated, and consequential damages and/or restitution to which Plaintiff and the Class are entitled;

f. Award disgorgement of monies obtained through and as a result of the wrongful conduct alleged herein;

g. Award Plaintiff and Class pre- and post-judgment interest as provided by law;

h. Enter such other orders as may be necessary to restore to Plaintiff and the Class to the status quo;

     i. Award Plaintiff and the Class reasonable litigation expenses and attorneys' fees as permitted by law; and

     j. Award such other and further relief as the Court deems necessary and appropriate.

Dated: January 21, 2025

Respectfully submitted,

By:   */s/ Roger N. Heller*
Roger N. Heller (State Bar No. 215348)
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
rheller@lchb.com

STEVEN A. SCHWARTZ*
steveschwartz@chimicles.com
BEENA M. MCDONALD*
bmm@chimicles.com
ALEX M. KASHURBA*
amk@chimicles.com
MARISSA N. PEMBROKE*
mnp@chimicles.com
CHIMICLES SCHWARTZ KRINER
& DONALDSON-SMITH LLP
One Haverford Centre
361 Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500

JAMES J. ROSEMERGY*
jrosemergy@careydanis.com
CAREY, DANIS & LOWE
8235 Forsyth, Suite 1100
St. Louis, MO 63105
Telephone: (314) 725-7700

*pro hac vice* application to be submitted